TALIAFERRO, Judge.
The learned trial judge has painstakingly and correctly stated the facts, the pleadings and the issues in this case, in written opinion, which, in conjunction with the record, we have carefully studied. We agree fully with his resolution of the factual issues tendered and with the legal principles he has applied to such facts. So well has he discussed and treated the .case, in all of its phases, we have decided to adopt, as our own, the opinion rendered by him. It follows:
“About January 1950 plaintiff, Robert Prelow, a colored man, then residing at Timón, Louisiana, entered into a verbal *468 agreement with the defendant, Will Mc-Ghee, a colored man of Shreveport, Louisiana, whereby McGhee was to sell to .Pre-low for $325.00 Lot No. 3 of the Dorian Subdivision of Shreveport, Caddo Parish, Louisiana, Unit No. 1. McGhee was a builder of houses. At the time of this agreement McGhee did not own the lot described, but had a contract to purchase the same from the owner thereof, J. C. Dori,an, a defendant herein, for the sum of $250.00. Simultaneously with the agreement between Robert Prelow and Will McGhee for the purchase of the lot, the two entered into a separate verbal agreement in which Will McGhee agreed to build a house and residence on the lot for Robert Prelow for the price and sum of $1,050.00. Thereafter, as will be hereinafter shown, Robert Prelow made certain payments in cash to McGhee, and on March 23, 1950, McGhee executed and delivered to Robert Prelow a written contract of sale of said lot, which contract is part of a booklet containing, in addition to the contract itself, spaces for the notation of payments thereon. (See Exhibit P-1.)
“Beginning in February 1950 or thereabout, McGhee started construction on the building but proceeded very slowly and intermittently. During this time plaintiff, Robert Prelow, had his son, Noel Prelow, a plaintiff herein, to come to Shreveport to observe the work being done on the house. On May 8, 1950, Robert Prelow, whose work at Timón, Louisiana, prevented his coming, sent his wife, Beatrice Prelow, and their son, Noel Prelow, to Shreveport with instructions to secure from Will McGhee a deed to the lot. Robert Prelow gave Noel Prelow $300.00 in cash, to complete the transaction. We think the evidence also sustains our finding that Robert Prelow also authorized his son, Noel Prelow, to conclude with Will McGhee whatever other instruments might be necessary to reduce to writing and record his contracts with Will McGhee, including the building of the house.
“Noel Prelow and Beatrice Prelow, on arriving in Shreveport, contacted Will Mc-Ghee, and together they went to the offices of Mr. A. C. David, an attorney and notary public of Shreveport. McGhee notified Mr. Dorian to also appear at Mr. David’s office to receive the balance due on the purchase contract for the lot between Mc-Ghee and Mr. Dorian heretofore referred to. When Mr. Dorian arrived at Mr. David’s office there had been prepared for Mr. Dorian’s signature a credit deed from Dorian to Noel Prelow, which included both the lot and improvements thereon, and stipulated a consideration of $325.00 cash and a mortgage and mortgage note for $835.00 to represent the balance. Mr. Dorian refused to sign this instrument, stating correctly that he had only agreed to sell Will McGhee the lot and was not interested in the improvements, whereupon this document was destroyed. Mr. David then, on instructions of Will McGhee and Noel Prelow and Beatrice Prelow, prepared a cash deed from Mr. Dorian to Noel Prelow of the lot only. Mr. Dorian signed this instrument (See P-18 attached to plaintiffs’ petition) and upon receiving the balance due him under his sales contract with Mc-Ghee, left the office. Thereafter, on instructions from Will McGhee, Noel Pre-low and Beatrice Prelow, Mr. David prepared an act of mortgage covering the lot and improvements and a mortgage note identified therewith in the amount of $835.-00. (See said instrument attached to plaintiffs’ petition.) Noel Prelow then signed the mortgage and the note before Mr. David as notary. This note was payable to Future Holder and by Noel Prelow, the maker, endorsed in blank.
“Noel Prelow paid to Will McGhee $285.00, being part of the money his father had given him, and paid $15.00 to Mr. David for drawing the deed and mortgage. It was out of this money received by him that Will McGhee paid Mr. Dorian the balance due Dorian by McGhee on the contract of sale of the lot.
.“Copies of the deed from Mr. Dorian to Noel Prelow and of the mortgage executed by Noel Prelow were given by Mr. David to Noel Prelow and he returned with them to his home in Timón, Louisiana, where both instruments were seen and observed by plaintiff, Robert Prelow immediately.
*469 “Will McGhee had negotiated with defendant, T. H. McCain, a lender of money, to finance the construction of the house he had agreed to build for Robert Prelow, and for this purpose negotiated the mortgage note which Noel Prelow had executed to Mr. McCain. Out of caution, Mr. McCain did not give to McGhee whatever amount he had agreed to acquire the note for but, instead, required that all hills for materials and labor going into the building be presented to him for payment.
“After continued desultory progress on the building, McGhee finally defaulted and Robert Prelow had to complete the building at considerable cost to him, as will be hereafter shown.
“At the time Noel Prelow received the deed from Mr. Dorian, which deed named Noel Prelow as vendee instead of Robert Prelow, and at the time Noel Prelow executed the mortgage and mortgage note on the' lot and building, Noel Prelow was a minor, lacking about three months of attaining the age of twenty-one years.
“In this suit Robert Prelow asks judgment against the defendant, J. C. Dorian, ordering him to correct and reform the deed of May 8, 1950, so as to show Robert Prelow to be the vendee therein, instead ■of Noel Prelow. Judgment is asked against T. H. McCain as the holder and owner of the mortgage note, canceling and erasing from the records the mortgage given by Noel Prelow on May 8th, and annulling and canceling the mortgage note executed by Noel Prelow in connection therewith. Judgment is further asked by Robert Prelow against Will McGhee for the sum of $618.62 for the amounts allegedly paid by Robert Prelow for the completion of the building. It is plaintiffs’ contention that Noel Prelow was unauthorized to take a deed from Mr. Dorian in Noel Prelow’s name as vendee, and that Noel Prelow was likewise unauthorized to execute the mortgage and mortgage note. It is further contended by plaintiff Robert Prelow that, inasmuch as Noel Prelow was a minor at the time he executed the mortgage and mortgage note, they were null and void for that reason.
“Mr. Dorian’s defense is that he had a contract with Will McGhee to sell McGhee the lot in question for the sum of $250.00 and that when called to the office of Mr. David on May 8, 1950, he executed the deed to the person to whom Will McGhee directed him to execute same; that he knew nothing of Will McGhee’s transactions with the Prelows; that he did not know either Robert or Noel Prelow, and that he had no knowledge of the minority of Noel Prelow. We think the evidence abundantly establishes these facts.
“It is Mr. McCain’s contention that he acquired the mortgage note from Will Mc-Ghee in good faith and that his transactions were with McGhee and that he had no knowledge of the minority of Noel Prelow when the note and mortgage were executed. He contends that he advanced ¡by way of bills for materials and labor, some of which were paid to Will McGhee and some of which were paid directly to the furnishers of the materials, approximately $750.00, the difference being represented by what he calls discount and carrying charges. We find in the evidence receipted bills and checks by Mr. McCain totaling $646.00.
“The defendant, Will McGhee, filed no answer and made no appearance in the case, and, as to him, issue was joined by the entry of a preliminary default.
“Noel Prelow has joined in this suit as co-plaintiff with his father, Robert Prelow, affirming all of the allegations of the father and in the prayer of the petition.
“It is our opinion, as heretofore indicated, that Noel Prelow was authorized by Robert Prelow to represent him in the transactions that occurred in Mr. David’s office on May 8, 1950. By that we mean that he was authorized by his father to come to Shreveport and do whatever might be necessary to close the transaction with Will McGhee. Mr. David, the attorney and notary, testifies that he was informed by Noel Prelow and his mother, Beatrice Prelow, that Noel Prelow was a minor. Will McGhee, Mr. David says, was present and heard this conversation. Mr. David states that he advised them against the *470 regularity of Noel Prelow acting in the premises, but that they insisted that ‘it was all in the family,’ and that is what they desired to do, since it was impossible for Robert Prelow to be present and execute the instruments. Mr. David testifies that after reluctantly consenting to draw the papers in that manner, he read them carefully to Noel Prelow and his mother, Beatrice Prelow, and explained to them that Noel Prelow was executing a mortgage and mortgage note.
“The evidence convinces us that Robert Prelow became aware that the deed had been made not to him, but to his son, Noel Prelow, as soon as Noel Prelow and his mother returned home. (See Evidence p. 30 et seq.) Robert testifies that he read the deed to Noel and questioned him about taking it in his name. But Robert Prelow says that he did not know that the other instrument was a mortgage. We think the latter hardly likely. We are convinced from the evidence that shortly thereafter Robert Prelow became acquainted with Mr. McCain’s connection with the transaction, for the evidence shows that Robert Prelow contacted Mr. McCain concerning the mortgage note. Robert Prelow himself was also in Shreveport and saw some of the materials which Mr. McCain paid for, going into the house before McGhee was discharged from the job. It is true that the evidence indicates that Will McGhee removed some of the materials which Mr. McCain had paid for and which were delivered to the job, and used them on other jobs and for his own purposes. We are convinced that Mr. McCain had no knowledge of this and that he was undertaking to protect not only himself, as the purchaser of the mortgage note, but also Robert Pre-low, in attempting to see that all labor and material bills were paid, by requiring Mc-Ghee to present such bills to him for payment.
“While a minor is under an incapacity, which prevents him from entering into a valid contract, he is expressly authorized by law to accept the contract of mandate, C.C. Art. 1785, and we think that it was in this capacity that Noel Pre-low acted in this case. Such being the case, we think it was the legal duty of Robert Prelow, upon discovery of the fact that Noel Prelow had acted as his man-datary in the manner in which he did, to disavow the same. Instead of so doing, the evidence convinces us that Robert Prelow continued to accept the benefits flowing from Mr. McCain’s expenditures after acquiring the mortgage note. Under these circumstances, we think Article 3303 of the Civil Code is pertinent. It reads:
“ ‘An attorney can only hypothecate the property of his principal, so far as he has a special power for that purpose.
“ ‘Nevertheless, if the attorney on effecting a loan for his principal, had granted a mortgage, and the latter had received the money for the loan, or if it had been usefully employed for his benefit, the principal would be bound to ratify the mortgage, and might be compelled to execute it.’
“Robert Prelow testified, when interrogated by the Court, that his contract with McGhee with reference to the building of the house was that he was to pay McGhee $20.00 per month, without mortgage or any other security whatsoever. We doubt this very much, for such a method of handling a transaction of this nature would be most unusual; and we think it rather inconsistent for Robert Prelow in one breath to claim the benefits of the action of Noel Prelow in accepting the deed to the lot from Mr. Dorian (Robert Prelow merely prays that said instrument be reformed and corrected) and at the same time to disavow and to accept none of the obligations imposed by the act of mortgage simultaneously executed by Noel Prelow. Moreover, so far as the lot is concerned, since Noel Prelow claims no interest in the same and asserts that he was purchasing the same for his father, all that is necessary for Robert Prelow to acquire title in his name is to have a conveyance of the lot made to him by Noel Prelow, who is now relieved of all of the disabilities of minority.
“It is our opinion that plaintiffs are not entitled to the relief prayed for against J. C. Dorian and against T. H. McCain.
“Plaintiff Robert Prelow is entitled to a judgment against Will McGhee for the *471 damages caused him by McGhee’s default on the building contract. We find that, after he took over the completion of the building, Robert Prelow paid bills for materials and plumbing and insurance on the building in the amount of $558.62. (See Evidence pages 12 to 15.) It is likewise shown that the electrical work which was not done in the building, but which McGhee contracted to supply, would cost $60.00, making a total of $618.62. The evidence likewise shows that Robert Prelow paid directly to Will McGhee on account of the building contract the sum of $210.00, as shown by receipts being Exhibits P-3, P-5, P-2, and P-6. In this connection Robert Prelow testified at page 29 of the Evidence, lines 14 and 15, that he gave Will $217.00, but the receipts above referred to total only $210.00. Exhibit P-4 is a receipt for $40.00 dated April 1st, which Robert Prelow testifies at page 58, lines 9-30 of the Evidence, is the identical payment of $40.00 entered in the purchase contract book for the lot, which is Exhibit P-1. (This explains the testimony of the witnesses that Noel Prelow paid to Will McGhee in Mr. David’s office on May 8th, $285.00 as the balance on the purchase price of the lot, the price being $325.00, which is made up by the $285.00 paid that date plus the $40.00 paid on April 1st.)
“Thus we find, having in effect held that the note in Mr. McCain’s hands is a valid obligation of Robert Prelow, that Robert Prelow’s house stands him in the amount of $1,663.62, being the aggregate of the sums of $210.00 paid to Will McGhee, $618.62 paid for materials and plumbing, etc., and the $835.00 represented by the mortgage note. Prelow’s contract with Will McGhee was that the house should be completed for the sum of $1,050.00. The difference between $1,663.62 and the contract price of $1,050.00 is the sum of $613.-62, which represents the damage Robert Prelow has sustained as a result of Mc-Ghee’s breach of the building contract. For this Robert Prelow will be given judgment.
“Accordingly, judgment will be signed herein rejecting the demands of Robert Prelow and Noel Prelow against the defendants J. G. Dorian and T. H. McCain, and in favor of the plaintiff, Robert Pre-low and against Will McGhee in the stun of $613.62, with interest thereon from judicial demand.
“/s/James U. Galloway Judge”
We are quite certain that had McGhee fulfilled his contract with Robert Prelow to erect the residence on the lot for $1,050, this law suit would not have arisen. Pre-low, because of loose business dealings with McGhee, exposed himself as prey to McGhee’s dishonest tactics and as a result found himself without a chance to retrieve his losses unless he could succeed in the effort embodied in this suit. He has himself largely to blame for the predicament in which he now finds himself.
The judgment from which appealed, is affirmed with costs.